WRIGHT, J.,
delivered the opinion of the Court.
This is a bill filed by the complainants, James B„ ;Seay and Joseph S. Seay, who are infants, to recover ■of the defendants, Young and Cowan, .a slave by the name of Leah, and her children, five in number.
The title supposed to exist in complainants is derived ■from the will of their grandfather, William Peatrass, of Oaroline county, in the State of Virginia, who died in ¡the year 1808.
*419 They allege, that under said will, their mother, Je-mima, who was a daughter of the said William Peatrass, the testator, took a life estate in the slave Leah, with remainder to them, as her only children; and that the other slaves being the offspring of Leah born since the will took effect, they are now entitled to recover the whole of them, their mother being dead.
The said will was made and took effect in the State of Virginia, where the testator lived and died, somewhere between the years 1826 and 1829; Jemima Pea-trass then having, as it is probable, arrived at the age of twenty-one years, intermarried in said county of Caroline with William B. Seay, the father of the complainants, who are the only issue of that marriage, and either shortly before or after the marriage, received into possession the slave Leah, under said will; after which she and her husband, with said slave, removed to the county of Haywood, in this State, where the said Je-mima departed this life, in the year 1842.
The defendants claim said slaves by purchase, made of the said William B. Seay, xhe father of complainants and husband of Jemima, in the year 1846.
They deny that complainants took any remainder under said will, and insist that the slave Leah, by' the force of said will, became the absolute property of the said Jemima; and that, upon her marriage with William B. Seay, the slave became his, and that he might lawfully sell her to them, and that they acquired a perfect title. And the question is, whether complainants or defendants have the better title ?
The clauses of the will, upon the construction of which 'this contest depends, are as follows, to wit;
*420 “ To my beloved wife, Amy Peatrass, I lend the land and plantation whereon I reside, together with Randal and Milly, also her choice of one fellow and one woman of my estate, during her widowhood; and, at her death, or marriage, the said land and negroes, with their increase, to be equally divided among my children and surviving heirs of the body ■ of those who may have deceased before that period, except the children of my deceased daughter,,' Nanoy Haden, to whom, in her lifetime, I lent, two negroes, to wit: Abram, a man, and Je-russe, a girl; and it is my will and desire that those two negroes and their increase he equally divided among my grandchildren, by my daughter Nanoy, deceased, when they come of age or marry, or when either of them marry or come of age. To this branoh of my family I leave no more of my estate»
“ Item. — It is my will and desire that my wife keep possession of the property of such of my children as may be under age without paying hire-, as a compensan tion for maintaining and educating said children; and as they arrive of lawful age, or marry, my executors are authorized and required to allot to such child, or children, an equal part with my son Richard, who has received a negro boy, Jerry, and a girl, Amy, horse, saddle, and bed and furniture; also, my daughter Jane, who has received a negro woman, Rachel, and a child, Huida, horse and saddle, bed and furniture; also, my daughter Polly, I give a negro boy, Moses, and a girl, Judy, horse and saddle, bed and furniture — none of which she has received, exoept a bed and furnituro. But if, when such allotment or division is made, there should not he enough to give to each of those children *421 ■who may be of age, or marry, an equal portion with my beforementioned children, Richard, Jane, and Polly, in that case they will only receive a proportion of what may be, exclusive of the part left my wife, at whose death, or marriage, I desire that my whole .estate bee equally divided among the following children: I mean and wish to be clearly understood before I name them, via: it is my express meaning and wish that all my children share alike in my general estate, and all those who have not received any part thereof, are to be made equal with my children beforementioned, viz: . Richard, Jane, and Polly, to whom I have lent and given already, near, or quite as much, except my daughter Polly, whn has only received the bed and furniture beforementioned, io .wit: Richard, Matthew, William, Jane, Amy, Polly, Barbara, .Walter, Sally, Samuel, Betsy, Susannah, Rebecca, and Jemima, to them and their lawful issue, cw áhe sui'vivors of them, as before stated, forever. And if any of my children should die before they come of age, or marry, (or, in that case, have no child,) it is my will -and desire that their part or parts be equally-divided among the survivors of them, or their lawful issue, except the children of my deceased daughter JTancy, to whom I have given all I intend.”
The testator then, in order that there might be no difficulty in making an equal division among his children*, when the period for the final division should come, empowers his executors to assess the value of the property already given off to his children, or to select three disinterested men to do so. And, lastly, he gives to his Wife, during life or widowhood, certain chattel property, *422 and provides, that at her death or marriage, the same be divided “as before stated.”
It is probable, from this record, that Amy Peatrass, the widow of the testator, survived the marriage of her daughter Jemima, but died long before the death of said Jemima. At all events, it is shown that the slave, Leah, was allotted to the said Jemima, under the second clause of the will, upon her coming of age, or marriage, and not in the general division of the estate.
There can, we think, be no doubt, upon a proper-construction of this will, that complainants took no interest whatever in the slave Leah; and that, in the events that have happened, she became the absolute estate of their mother, the said Jemima, and passed, by the marriage, to her husband, William B. Seay, who had a right to sell her and her offspring to defendants.
In the construction of this will, all its parts are to be taken with reference to each other, and the intention of the testator collected from the entire instrument. 1 Sneed, 394. .
The true meaning of the first clause of the will undoubtedly is, that the widow of the testator is to have an estate for life, or widowhood, in the land and slaves given her; and, at her death, or marriage, the same, with its increase, is to be equally divided among such of the testator’s children as may then be living, and the surviving issue of such of his children as may have died before that period, except the children of his daughter Nancy.
If a child died before the period of division, viz: the death or marriage of the testator’s widow, leaving children who remained alive until the period of division, then *423 they took the share of the deceased child; but if the child left no children, or there were none a.t the time of division, the share of that child went to the surviving children, and the surviving issue of such as may have died before that period.
It is mauifest no remainder was intended to be created in favor of any of the grandchildren of the testator whose parents were living when the particular estate- of. his widow ceased; and that under this clause complainants, can claim nothing, their mother having survived the widow of the testator.
And it is equally plain the second clause of the will hath this extent and no more. The devise to all his children in that clause, and the words “ to them and their lawful issue, or the survivors of them, as before stated, forever,” have precisely this meaning.
The words “'as before stated,” refer expressly to the first clause, and can have no other meaning than that the children alive at the period of the final division, and the children then living of such as may have died, (except the children of Nancy,) are to take an absolute 'estate.
These words controlled the estate to be divided at the death or marriage of the widow, and then to provide for the care of children who might be under age or unmarried at the period of general division, (the death or marriage of the widow being possible at anytime,) and who might die before they came of age or married, or the case of married children who should die without child ;■ and to cover the entire share of each child in the estate, the will ‘ further provides: “ And if any of my children should die before they *424 come of age, or marry, (or, in that oase, have no child, i. &. in case of marriage,) it is my will and desire that t'heir part or parts be equally divided among, the survivors of 'them and their lawful issue, except the children of my deceased daughter Nancy, to whom I havs given all I intend."
It will thus be manifest that Jemima’s share was an absolute interest, unless she died under twenty-one, unmarried, or without issue, upon which events there wag an executory devise in favor of her surviving brothers and sisters, and the issue of those deceased. But there was no remainder or interest to her children in the events that have happened, and the ulterior interests, a& to her share, are all defeated, because the events on which they depended never occurred.
The Chancellor so held, and we affirm his decree.